UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ROBERT I. TOUSSIE and LAURA
TOUSSIE LTD.,

                  Plaintiffs,

       -against-

TOWN BOARD OF THE TOWN OF
EAST HAMPTON and TOWN OF EAST
HAMPTON,

                  Defendants.
-----------------------------------------------------X

**MEMORANDUM & ORDER**
Civil Action No. 08-1922
(DRH)(WDW)

**APPEARANCES:**

**Hamburger, Maxson, Yaffe, Wishod & Knauer, LLP**
Attorneys for Plaintiffs
225 Broadhollow Road, Suite 301E
Melville, New York 11747
By:    David N. Yaffee, Esq.

**Cahn & Cahn, LLP**
Attorneys for Defendants
445 Broadhollow Road, Suite 332
Melville, NY 11747
By:    Richard C. Cahn, Esq.

**HURLEY, Senior District Judge:**

       Plaintiffs Robert I. Toussie and Laura Toussie, Ltd. ("Plaintiffs") commenced this action

asserting claims for relief against defendants the Town Board of the Town of East Hampton and

the Town of East Hampton (collectively "Defendants" or "Town") in connection with the

Town's enactment of Local Law 16 of 2005, which upzoned a certain parcel of property owned

by Plaintiffs from 2-acre to 5-acre zoning.  Plaintiffs assert that the upzoning violated their equal

protection rights.  They also maintain that Local Law 16 of 2005 is void as the Town did not

comply with New York General Municipal Law §239-m ("Municipal Law 239-m"). Presently before the Court is the Town's motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below the motion is granted.

**Background**

The Amended Complaint ("AC") contains the following allegations:

Plaintiffs own an approximately 15.1 acre parcel of undeveloped property located on Manor Lane, East Hampton and designated on Suffolk County Tax Map as District 300, Section 63, Block 4, Lot 9 (the " Manor Lane Property"). Prior to the Town's adoption of Local Law 16 of 2005 ("Law 16-2005"), the Town had been actively seeking to purchase the Manor Lane Property, tendering numerous steadily increasing offers, all of which were rejected as inadequate. Prior to the adoption of Law 16-2005, the Manor Lane Property was in a residential zone which allowed for a minimum lot size of 2 acres per parcel and therefore could have been subdivided into approximately 7 building lots. (AC ¶¶ 10-13.)

The Manor Lane Property is adjoined by a "similar" parcel of undeveloped real property, known as Briar Croft Section 3 and designated on Suffolk County Tax Map as District 300, Section 63, Block 4, Lot 8.8 (the "Briar Property"). Prior to the adoption of Law 16-2005, the Briar Property was also in a residential zone which allowed for a minimum lot size of 2 acres per parcel. (AC ¶ 14.)

The Briar Property and the Manor Lane Property were both initially selected by the Town for upzoning to an increased minimum five acre lot size in the draft version of Law 16-2005. (AC ¶ 15.) In the adopted version of Law 16-2005 the Briar Property "was selectively upzoned

to a more favorable three acre minimum lot size zoning requirement, while the Manor Lane Property, which [P]laintiffs refused to sell to [the Town] for their increasing offer prices, was, upon information and belief, intentionally, and with ill will and illegitimate animus, singled out for selective upzoning to a more onerous five acre minimum lot size zoning requirement as a result of the adoption [of Law 16-2005]. (*Id.* ¶ 16.)

Asserting that "[t]here is no rational or proper governmental basis for the different treatment" accorded by the Town to the Manor Lane Property as opposed to the Briar Property, Plaintiffs claim that the Town has "maliciously, intentionally, and with ill-will adopted a policy and practice to deprive [P]laintiffs of their constitutional rights to equal protection . . . ." (AC ¶¶ 18-19.)

Law 16-2005 was subject to the referral requirements of Municipal Law 239-m. As such, 30 days prior to taking final action to enact it, the Town was "required to deliver to the Suffolk County Department of Planning a full statement of the proposed action, constituting, among other things, all material required by and submitted to [the Town] as an application on the proposed action, the complete text of the proposed local law to be enacted, and all materials required by [the Town] in order to make [its] determination of significance pursuant to New York State Environmental Quality Review Act (SEQRA) under Article Eight of the New York State Environmental Conservation Law and its implementing regulations." It is alleged that the Town did not comply with Municipal Law 239-m in that it did not deliver to the Suffolk County Department of Planning 30 days prior to Law 16-2005's enactment "several material documents including the final version and complete text of the proposed local law and the associated

Comprehensive Plan or the Final Generic Environmental Impact Statement . . . " and therefore

Law 16-2005 is void ab initio.  (AC ¶¶ 22-26.)

## Discussion

### I.     Motion to Dismiss: Legal Standards

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has

recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule

12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-

known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief."  550 U.S. at 562.

Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face."  *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court

provided further guidance, setting forth a two-pronged approach for courts deciding a motion to

dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (same). A document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original).

5

A district court may also "rely on matters of public record in deciding a motion to dismiss under [R]ule 12(b)(6)." *Parks v. Town of Greenburgh*, 2009 WL 2628516, at *2 (2d Cir. Aug. 27, 2009) (Summary Order); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)"); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (district court may examine public disclosure documents on 12(b)(6) motion)*; see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Finally, in certain circumstances "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be allowed to escape the consequences of its own failure." *Cortec Indus.,* 949 F.2d at 47.

## II.    Additional Materials Submitted by the Town

Defendant has presented to the Court additional materials relative to the merits of Plaintiffs' claims, some of which are documents upon which Plaintiffs solely relied in bringing this action and are integral to the Complaint, or are matters of public record, and some of which are matters outside the pleadings.[1]  The additional materials are[2]:

---

[1] The Second Circuit has made clear that "[w]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting materials." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (same).  A district court, however, "is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case

1.      Ex. C - Comprehensive Plan Update of the Town of East Hampton, adopted May 6, 2005;

2.      Ex. D - East Hampton Town Board Resolution No. 646, dated May 6, 2005, adopting SEQRA Written Findings Statement in connection with the Comprehensive Plan dated May 6, 2005;

3.      Ex. E - East Hampton Town Board Resolution No. 650, dated May 6, 2005, together with Local Law 16 of 2005;

4.      The Affidavit of Marguerite Wolffsohn, Planning Director of the Town of East Hampton, with the following documents:

(a )    Ex. F - Conditional Preliminary Approval Granted August 22, 1990 by the Planning Board of the Town of East Hampton for Briar Croft Section II;

(b)     Ex. G - Conditional Final Approval of Briar Croft Section II, dated March 10, 1992;

(c)     Ex. H - Map of Briar Croft Section II filed in Suffolk County Clerk's Office on March 22, 1994;

(d)     Ex. I - Excerpt from Final General Environmental Impact Statement adopted in connection with the 2005 Comprehensive Plan update and rezoning law;

(e)     Ex. J - Recommendations 9 and 9a from the Town of East Hampton Comprehensive Plan Update;

(f)     Ex. K - Letter dated November 3, 2004 from Gerald G. Newman, Chief Planner, Suffolk County Department of Planning to Fred Overton, East Hampton Town Clerk; and

(g)     Ex. L - Letter dated November 3, 2004 from Gerald G. Newman, Chief Planner, Suffolk County Department of Planning to Fred Overton, East Hampton Town Clerk.

5.      Supplemental Affidavit of Marguerite Wolffsohn.

---

in which a defendant seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)." *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 450-51 (E.D.N.Y. 2007) (citing *Friedl*, 210 F.3d at 83); *see Rice v. Kawasaki Heavy Indus., Ltd*., 2008 WL 4646184, at *2-3 (E.D.N.Y. Oct. 17, 2008) (same); *Axelrod v. Flannery III*, 476 F. Supp. 2d 188, 202 (D. Conn. 2007) (same).  At this stage in the litigation, the Court declines to convert Defendants' Rule 12(b)(6) motion into one for summary judgment given that discovery has not been completed and an Answer has not been filed.

[2] Exhibits A and B submitted by the Town are the complaint and amended complaint, respectively.

For purposes of deciding the instant motion to dismiss, the Court finds that the following documents are documents that are incorporated by reference in the Complaint, are documents upon which Plaintiff solely relied in bringing this action and are integral to the Complaint, or are matters of public record: (1) Ex. C - Comprehensive Plan Update of the Town of East Hampton, adopted May 6, 2005; (2) Ex. D - East Hampton Town Board Resolution No. 646, dated May 6, 2005 adopting SEQRA Written Findings Statement in connection with the Comprehensive Plan dated May 6, 2005; (3) Ex. E - East Hampton Town Board Resolution No. 650, dated May 6, 2005, together with Local Law 16 of 2005; (4a)  Ex. F - Conditional Preliminary Approval Granted August 22, 1990 by the Planning Board of the Town of East Hampton for Briar Croft Section II; (4b) Ex. G - Conditional Final Approval of Briar Croft Section II, dated March 10, 1992; (4c) Ex. H - Map of Briar Croft Section II filed in Suffolk County Clerk's Office on March 22, 1994; (4d) Ex. I - Excerpt from Final General Environmental Impact Statement adopted in connection with the 2005 Comprehensive Plan update and rezoning law; (4e) Ex. J - Recommendations 9 and 9a from the Town of East Hampton Comprehensive Plan Update.  *See, e.g., Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008) (holding "[o]ur review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in the complaint"); *Parks*, 2009 WL 2628516, at *2; *Pani,* 152 F.3d at 75 (2d Cir.1998) (courts may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) "including case law and statutes"); *Kramer,* 937 F.2d at 774.

For purposes of deciding this motion, the following documents are excluded from the Court's consideration of the motion: the Wolffsohn Affidavit, the Supplemental Affidavit of

Wolffsohn and Exhibits K and L to Wolffsohn Affidavit (November 3, 2004 letters). The Affidavits, and Exhibits K and L are not incorporated in the complaint by reference, are not documents upon which the Plaintiff solely relied in bringing this action and are integral to the Complaint, and are not matters of public record. *See Roth,* 489 F.3d at 509; *see also Cyril v. Neighborhood P'ship II Hous. Dev. Fund,* 124 Fed. Appx. 26, 27 (2d Cir. 2005) (noting that the consideration of an affidavit in ruling on a motion to dismiss would have been improper).

## III. The Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment guarantees "'[the] right to be free from invidious discrimination in statutory classifications and other governmental activity'." *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001); *accord City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 439 (1985); *Disabled American Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992). Thus, "[a]n equal protection claim has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 321-22 (E.D.N.Y. 2002) (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)); *see also  Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005); *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir.

1980). Alternatively, in the absence of selective treatment based on impermissible considerations, a plaintiff may also state a claim if it can allege that defendant(s) "intentionally treated [it] differently from others 'similarly situated' with 'no rational basis for the difference in treatment.'" *Bizzaro*, 394 F.3d at 86 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Such a claim is sometimes referred to as a "class of one" equal protection claim. *Olech*, 528 U.S. at 564; *see also Prestopnik v. Whelan*, 249 Fed. Appx. 210, *2 (2d Cir. Aug. 16, 2007) (Summary Order).

Plaintiffs in the present case assert that their right to Equal Protection was violated in that: (1) there is no rational basis for the difference in treatment and (2) the differing treatment was motivated by malice or intent to injure. The Court shall address each claim in turn.

## A.     Class of One - No Rational Basis

The Court's analysis begins, as it must, "by reviewing plaintiff's amended complaint for allegations that are conclusory and thus not entitled to the presumption of truth." *Hayden v. Paterson*, – F.3d –, 2010 WL 308897, * 8 (2d Cir. Jan 28, 2010). To the extent the amended complaint alleges, for example, that the Town acted "maliciously" "with ill will" and "illegitimate animus" or that Plaintiffs were "singled out," such conclusory allegations, absent concomitant factual predicates, are to be set aside. *Id. (*citing *Iqbal*, 129 S. Ct. at 1951).[3]  Here,

---

[3]  The parties disagree as to whether the allegation of similarly situated must be factually supported and if so the extent thereof. Defendants rely upon, for example, *DeMuria v. Hawkes*, 203 F.3d 704, 707 (2d Cir. 2003) and *Petruso v. Schlaefer,* 474 F. Supp. 2d 430, 439-440 (E.D.N.Y. 2007) to support their assertion that differing treatment together with an allegation of being similarly situated is sufficient. The holdings of these cases are problematic in view of *Iqbal.*   In this Court's view, *Twombly* and *Iqbal* require sufficient factual allegations to make the conclusion of similarly situated plausible.

the factual allegations consists of (1) plaintiffs' ownership of a 15.1 acre parcel of undeveloped land in the Town which, prior to the adoption of Law 16-2005, was in a residential zone that allowed for minimum lot size of 2 acres per parcel and therefore could have been subdivided into approximately 7 building lots and which parcel the Town had been actively seeking to purchase; (2) adjourning Plaintiffs' parcel is a similar parcel of undeveloped property which, prior to Law 16-2005, was also zoned to allow a minimum lot size of 2 acres per parcel; and (3) although both were initially selected by the Town for upzoning to an increased minimum five acre lot size in the draft version, in the final bill the adjoining property was only upzoned to require three acre minimum while plaintiffs' property remained zoned for the more onerous five acre minimum lot size.

Having separated the "wheat" from the "chaff", the Court shall proceed to determine the plausibility of Plaintiffs' claim that the differing treatment lacks a rational basis.

Documents, upon which the Court may properly rely in deciding this motion to dismiss, demonstrate the existence of a rational basis for the Town's differing treatment.

Law 16-2005 rezoned numerous parcels of land in the Town in accordance with the Comprehensive Plan Update of the Town of East Hampton adopted May 6, 2005 (the "Comprehensive Plan"). Law 16-2005 contains "Findings and Objectives," which section sets forth that after reviewing and discussing all the comments regarding the proposed rezonings, the Town's Board decided to make certain modifications both to the proposed Town Comprehensive Plan and proposed Law implementing a new zoning map for the Town. It further states:

> The standard that the Town Board utilized to evaluate
> public comments and to made modifications should be understood

at the outset.  The focus of the Town Comprehensive Plan is to promote the public good and welfare.  The Town Board sought to do this with the least possible adverse impact on the environment.  In considering public comments, the Town Board weighed the desire to protect the general welfare of the community against any adverse impact that a particular action may have on an individual property owner.  The Town Board also looked at alternatives that might have been suggested by a landowner to promote the same public good.  In those cases where the Town Board determined that the adverse impact to individual property owner outweighed the public good achieved by a particular action, the Town Board made modification. . . .

Factors that were considered by the Town Board in making any changes included whether a landowner had been in long and intensive negotiations for a property for land preservation and a change in zoning would upset the public good that would be achieved by bringing such discussions to a conclusion.  Other facts considered by the Board included whether landowners voluntarily offered density reductions or a conservation easement which would achieve the goals of the Plan without any need of action by the Town.  The Town also took into account the time, effort, and resources that property owner might have undertaken to develop property.  Where it found that the benefit of a particular zoning recommendation was slight or de *minimis* and the property owner had invested substantial resources that would create a hardship, the Town weighed such factors and revised the Plan and map accordingly.

(Law 16-2005 at 3.)  With respect to the Briar Property, among many others, the "Findings and Objectives" section of Law 16-2005 states that:

based on comments received at the public hearing and during the public comment period, after carefully considering each proposed zoning recommendation made by the draft Comprehensive Plan, that in some instances a zone change is appropriate, but a lesser change than that originally recommended by the Plan is more suitable at this time.  The reason for reducing the recommended zoning change for specific parcels and the areas surrounding those parcels are set forth in the Final Environmental Impact Statement . . . , pgs.72-120, accepted by Town resolution number 536 of April 14, 2005 [and the] Comprehensive Plan, dated May 6, 2005, at

12

pages 115- 185.

(*Id.* at 6-7.)

The above referenced pages of the Comprehensive Plan set forth general narratives of the

zoning and other land use recommendation for each of the Town's areas that are traditionally

identified as separate communities.  The recommendations covering the Manor Lane and Briar

Properties are recommendations 9 and 9a, respectively, for the hamlet of Springs.  They state:

> 9.    Rezone from A and A2 Residence to A5 Residence the land
>        at and near the northwest intersection of Old Stone
>        Highway and Spring Fireplace Rd.
>        **Explanation**- All of this land is within the contributing
>        watershed to Accabonac harbor, a NYS Significant Coastal
>        Fish and Wildlife Habitat and a US Fish and Wildlife
>        significant ecological complex.  Most of this land is
>        recommended for protection by the Critical Lands
>        Protection Program of the Peconic Estuary program for
>        marine water quality and ecology purposes.  Most of this
>        property is eligible for inclusion in the proposed Accabonac
>        Harbor Scenic Area of Statewide Significance designation.
>        Some of the land is farmland.  The portion of this area
>        situated near Old Stone Highway and Spring Fireplace
>        Road, the key intersection in Springs, is within the Springs
>        Historic District and is across from public lands and
>        buildings with historic significance.  The rural landscape of
>        this area, including the farmland together with the historic
>        buildings in this area, creates a unique visual character with
>        roots in the region's 17th and 18th century origins.
>
>        Rezoning will help to protect the water quality and ecology
>        of Accabonac harbor and the Peconic Estuary, as well as
>        the rural, scenic and historic character of the area.
> 9a.   Rezone from A to A3 Residence the 18 acre parcel of land
>        within the block of land described in Recommendation #9
>        above, located directly opposite the intersection between
>        Springs Fireplace Rd. and Old Stone Hwy.
>        **Explanation**- While this parcel of land contains the
>        physical characteristics described in Recommendation #9

13

above, the development history of this block of land is distinct from the other parcels. This parcel has been created as a result of a multi-phased subdivision process which received approval from the East Hampton Planning Board. In accordance with the 1992 subdivision involving this parcel of land, the property owners divided 42 acres into 13 lots approximately one acre in size, two agricultural reserved areas having combined acreage of 9.3 acres, and one 18 acre lot reserved for future subdivision into no more than five residential lots. By filing this subdivision map, the property owner voluntarily reduced the potential residential build-out from 36 to 18 lots and set aside the reserved area based on the entire acreage. The reserved area provides permanent protection to the on-site farmland.

Considering the agricultural easement filed and the voluntary reduction in potential residential build-out already implemented for this property, rezoning to A3 Residence is appropriate to protect the natural and cultural features of this [sic] on this land.

(Comprehensive Plan at 163-64. *See generally* Map of Briar Croft Section II filed in Suffolk County Clerk's Office on March 22, 1994 (Wolffsohn Ex. H.).)

In view of the foregoing, plaintiffs' equal protection claim is implausible because the allegations in the complaint are "incompatible with" the claim of no rational basis. *See Iqbal*, 129 S. Ct. at 1950. Indeed, the Briar Property was earlier part of a larger subdivision development which resulted in (1) an agricultural easement of almost ten acres and (2) a voluntary reduction in the potential residential build-out. Given the Briar Property's distinct "development history" (Comprehensive Plan at 164), this Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949; *cf. Willets Point Industry and Realty Assoc. v. City of New York*, 2009 WL 4282017, *6-7 (E.D.N.Y. Nov, 25, 2009) (dismissing equal protection claim that the city's failure to provide municipal infrastructure to Plaintiffs while

routinely providing it to similarly situated person was without a rational basis in view of the obvious alternative explanations and study that concluded that greater investment in area infrastructure pertaining to plaintiff's parcel could not be justified so long as neighborhood remained primarily industrial); *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 236 (E.D.N.Y. 2009) (dismissing claim that village's issuance of a building permit allowing for construction of house that blocks Plaintiff's previously unrestricted water view violated plaintiff's equal protection rights because, inter alia, complaint did not demonstrate that the decision was wholly irrational or arbitrary). *See generally Hayden*, -- F.3d at -- , 2010 WL 308897 at *15-16 (relying on legislative history to find claim of intentional discrimination implausible under *Iqbal*). The Town's conduct is subject only to a rational basis review, a deferential standard that requires the denial of an equal protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis" for the Town's action. *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001); *see Harlan*, 273 F.3d at 500 (zoning decision can be considered irrational only when a board acts "with 'no legitimate reason for it decision'") (quoting *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996)). In fact, the asserted basis for the action is "given a strong presumption of validity," and the Town "need not provide any evidence to support the rationality of the reason." *Domond v. INS*, 244 F.3d 81, 87 (2d Cir. 2001).

The motion to dismiss the class of one claim is granted.

### B. Treatment Motivated by Malice

Plaintiff's second Equal Protection claim is that the difference in treatment between their property and the Briar Property was motivated by malice or ill-will.

The Court's analysis again begins with separating the well-pleaded factual allegations from the conclusory assertion. After setting aside such conclusory allegations, the Court finds that Defendants have failed to set forth a plausible claim that the differing treatment was motivated by malice or ill-will.

The sole factual allegation to support the legal conclusion of malice or ill-will is that "the Town had targeted [P]laintiffs property for acquisition and made numerous offers to purchase it, and plaintiffs had repeatedly refused to sell to the Town." (Pls.' Mem in Opp. at 16 (citing AC ¶¶ 11, 16).) In the circumstance of this case, such is insufficient to state a plausible claim that the differing treatment was motivated by malice or ill-will. Two Second Circuit decisions are instructive.[4]

In *Bizzaro*, 394 F.3d 82, the plaintiffs claimed, inter alia, that the initiation of disciplinary proceedings against them was violative of Equal Protection as defendants intentionally treated them differently than similarly situated corrections officers because of a malicious intent to injure them. The disciplinary proceedings arose from the plaintiffs' alleged refusal to assist Cheverko, the commander of the Special Investigations Unit, in the investigation of a corrections officer suspected of smuggling contraband. *Id.* at 83-86.

In support of their claim of malice, the *Bizzaro* Plaintiffs relied on evidence that

---

[4] The Court is cognizant of the fact that both *Bizzaro* and *Harlen* were decided on motions for summary judgment whereas the instant motion is one to dismiss pursuant to 12(b)(6). Both decisions, however, provide guidance on the legal principles that guide an Equal Protection claim such as the one under discuss. Indeed, the Supreme Court in both *Twombly* and *Iqbal* began its analysis of the sufficiency of the complaint with a discussion of the legal principles implicated by the cause of action asserted in the complaint. *See Twombly*, 550 U.S. at 553-554; *Iqbal*, 129 S. Ct. at 1947.

Cheverko became angry at them at various points in the investigation. The Second Circuit found that the "angry responses" to their "recalcitrance" actually tended "to undercut rather than to bolster their theory." *Id.* at 87. The Court reasoned:

> the branch of equal protection law that protects individuals from unequal treatment motivated by "malicious or bad faith intent to injure" provides protection from adverse governmental action that is not motivated by "legitimate government objectives." If the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to "get [someone] for reasons wholly unrelated to any legitimate state objective."
>
> The plaintiffs' evidence demonstrates that Cheverko grew angry at their refusal to assist in the investigation because he wanted the investigation to succeed. Such a motivation is not impermissible in the sense required by *LeClair* [*v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)].

394 F.3d at 87 (citations omitted) (bracketed material in original).[5]

In *Harlen,* 273 F.3d 494, the plaintiff asserted that the defendants' denial of a special use permit to operate a convenience store violated, inter alia, his right to equal protection. In support of its claim of malicious intent, the plaintiff offered three bases: (1) community opposition to the proposed use; (2) the participation in the decision of a board member who resided on the same street as the property for which the special use permit was sought; and (3) defendants' formal decision contained reasons not mentioned in its initial informal decision. In rejecting the claims as speculative, the court began by noting:

---

[5] The *Bizzaro* plaintiffs also argued that the disciplinary charges themselves supply the requisite evidence of malice. The court disagreed, stating "To prevail, plaintiffs must prove that the disparate treatment was caused by impermissible motivation. They cannot merely rest on a showing of disparate treatment." 394 F.3d at 87.

As a preliminary matter, we note that neither partner in Harlen Associates alleges that they had any personal conflicts with members of the Board or with Village officials. The entire claim of animus is based on the reaction of the Board and members of the community to their proposal*503 to build a 7-Eleven on their property. Enmity directed toward a business property use may not form the basis for a constitutional claim because equal protection rights vest in individuals rather than business activities. *See Shelley v. Kraemer*, 334 U.S. 1, 22, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) ("The rights established [by the first section of the Fourteenth Amendment] are personal rights."). To the extent that the record reveals any hostility, it was directed at the proposed use of the property, not the owner, and therefore does not implicate the Equal Protection Clause.

273 F.3d at 502-03. The Court then proceeded to find that the record evidence was insufficient to survive summary judgment. The assertion that the denial was motivated by community animus against the convenience store franchise has no basis in fact as the board signaled its decision well before any public comments were solicited and in fact the public comments did not evince personal animus towards Harlen. Regarding the Board member's participation and failure to recuse himself although he lived on the same block as the site at issue, there was no evidence that the board member had a financial or family related interest in the application. Finally, contrary to the suggestion that the formal decision contained fabricated reasons, the court noted that each of the reasons in the formal decision were discussed at the hearing in varying degrees.

As noted earlier, the sole factual basis proffered to support the claim of malice is the Plaintiffs' refusal to sell the Town the land for its open space program. As in *Harlen*, there are no allegations that Plaintiffs had any personal conflicts with any members of the Town's Board. Moreover, to the extent the upzoning of Plaintiffs' property was motivated, as in *Bizzaro,* to secure compliance with governmental objectives - here, preservation of natural resources, "then

by definition the motivation is not spite, or malice, or a desire to 'get [someone] for reasons wholly unrelated to any legitimate state objective'" and therefore "not impermissible" in the sense required for an Equal Protection claim. *Bizzaro*, 394 F.3d at 87 (citations omitted). Finally, and to partially reiterate, given the development history of the Briar Property discussed above whereby the owners granted an agricultural easement and voluntarily reduced the potential residential build-out, the facts pled by Plaintiffs are, at best, "'merely consistent with' [the Town's] liability [and] 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57). For each of these reasons, the Court concludes that Plaintiffs have failed to state a plausible claim that the differing treatment between the Plaintiff's property and the Briar Property was motivated by malice or ill-will. *See generally Butler v. City of Batavia*, 323 Fed. Appx. 21, 2009 WL 910194 (2d Cir. 2009) (Summary Order) (affirming district's court's granting motion to dismiss as plaintiffs did not plead facts sufficient to make plausible their claim that difference in treatment was motivated by impermissible considerations).

The motion to dismiss the Equal Protection claim based on malice and/or ill-will is granted.

## III.    Municipal Law 239-m Claim

Having found that Plaintiff's federal claims should be dismissed, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's Municipal Law 239-m claim, *see* 29 U.S.C. § 1367(a), the sound exercise of its discretion dictates that it decline to do so as

resolution of the state claim would require the determination of additional factual and legal issues. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues).

In the event, in accordance with the discussion below, Plaintiffs are able to further amend the complaint to assert a federal claim, the Court will, at that time, address the Defendants' motion to dismiss the Municipal Law 239-m claim.

## IV.    Leave to Amend

Upon granting a motion to dismiss, leave to replead should be given unless a plaintiff is unable to allege any fact sufficient to support its claim, in which case the complaint should be dismissed with prejudice. *See Cortec*, 949 F.2d at 48; *Pavone v. Puglisi*, 2009 WL 3863362 (2d Cir. Nov. 19, 1009) (Summary Order).

Plaintiffs' class of one claim is dismissed with prejudice as Plaintiff cannot plead facts demonstrating the alleged differing treatment was without a rational basis.

Turning then to Plaintiffs' claim that its differing treatment was motivated by malice, the Court finds it difficult to imagine how Plaintiffs could adequately plead facts to support this claim. Nevertheless, the Court accepts the possibility that Plaintiffs' imagination exceeds its own. Therefore, the claim is dismissed with leave to amend, provided said motion is filed within twenty (20) days of the date hereof, the Court dispensing with its usual bundle rule.

**Conclusion**

For the reasons set forth herein, Defendants' motion to dismiss the Equal Protection class of one claim is granted with prejudice. The motion to dismiss the Equal Protection claim based on malice is granted without prejudice. Plaintiffs may move to amend the complaint as to this latter claim within twenty days of the date hereof. To the extent no motion to amend is made, the Court will issue an order declining to exercise jurisdiction over Plaintiffs' state law claim based on Municipal Law 239-m and said claim will be dismissed without prejudice.

Dated: Central Islip, New York
February 17, 2010

/s/_____
Denis R. Hurley
Senior District Judge