UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERT I. TOUSSIE, et al.

                Plaintiffs,                       <u>MEMORANDUM & ORDER</u>
                                              08 CV 1922 (DRH)(WDW)

           -against-

TOWN BOARD OF EAST HAMPTON, et al.,

                Defendants.
----------------------------------------------------------X
APPEARANCES:

For Plaintiffs:
      William D. Wexler, Esq.
      816 Deer Park Avenue
      North Babylon, NY 11703

For Defendants:
      Cahn & Cahn, LLP
      445 Broadhollow Road, Suite 332
      Melville, NY 11747
        By:  Richard C. Cahn, Esq.

HURLEY, Senior District Judge

       Pending before the Court is plaintiffs' motion, made pursuant to Rule 15 of the Federal

Rules of Civil Procedure, for an order permitting service of a Second Amended Complaint.  For

the reasons provided <u>infra</u>, that motion is denied with prejudice on the ground of futility.

<u>Background</u>

       This is the third Memorandum and Order addressing the adequacy of plaintiffs'

pleadings, and the second time I have focused on the sufficiency of their proffered Second

Amended Complaint.  As a result of the Court's prior rulings, the sole remaining cause of action

is the one asserting a denial of equal protection based on malice.  As to that claim, plaintiffs

allege that defendant Town of East Hampton, and its Town Board, violated their equal protection

rights via the enactment of Local Law 16 of 2005 which upzoned approximately 15.1 acres of an

undeveloped parcel of property owned by plaintiffs located on Manor Lane, East Hampton from

two-acre to five-acre zoning, while granting "a similarly situated adjacent parcel," the Briar

Croft Property, "a more favorable three acre minimum lot size."  (Amended Compl., ¶¶ 2, 16;

see also Proposed Second Amended Complaint (hereinafter for citing purposes only, "SAC") ¶¶

16, 17.)  In addition, plaintiffs maintain that defendants vindictively mandated trail easements

and reserved areas for their proposed subdivision of the Manor Lane property, but not for a

proposed subdivision on the adjoining Briar Croft parcel.[1]

Given that the background information giving rise to plaintiffs' claims was detailed in my

earlier memoranda and orders, dated February 17, 2010 ("2010 Decision" or "2010 M. & O.")

and March 31, 2011 ("2011 Decision" or "2011 M.& O."), it will not be reiterated here but rather

is incorporated by reference.

## 2010 Decision

In the 2010 Decision, defendants' motion to dismiss brought pursuant to Federal Rule of

Civil Procedure 12(b)(6) was granted in toto.  However, one of the dismissed causes of action, to

wit, the malice-based equal protection claim was dismissed without prejudice, with leave to

move to amend the complaint.  In dismissing that claim as then pled, the Court concluded that

even if its factual allegations – once trimmed of the purely conclusory assertions – were true,

plaintiffs had "failed to set forth a plausible claim that the differing treatment was motivated by

malice or ill-will."  (2010 M. & O. at 16.)  That determination was largely based upon my

interpretation of the holding in Bizzarro v. Miranda, 394 F.3d 82 (2d Cir. 2005), in which the

Second Circuit explained, that "[i]f the motivation to punish is to secure compliance with agency

---

[1] This second part of the equal protection with malice claim is patently devoid of merit as
evidenced by the public records pertaining to the two parcels.  That subject, including the
appropriateness of considering those public records in determining plaintiffs' Rule 15 motion, is
addressed infra in the text towards the end of this opinion.  Prior to that point, however, the
Court's analysis will focus solely on plaintiffs' equal protection challenge based on defendants'
enactment of Local Law 16 of 2005.

objectives, then by definition the motivation is not spite, or malice, or a desire to get someone for reasons wholly unrelated to any legitimate state objective."[2] Id. at 87 (internal quotation marks, and cite, deleted).

The evidence appropriately considered in determining the Rule 12(b)(6) motion (see 2010 M. &. O. at 5-9) — construed, as it must be, most favorably to the non-movant plaintiffs — demonstrates that the targeted upzoning was intended, at least in part, if not wholly to advance legitimate municipal goals. (Id. at 11-14.) Such being the case, I concluded in the 2010 Decision that plaintiffs' malice-based equal protection claim was not sustainable as a matter of law.

2011 Decision

Following receipt of the 2010 Decision, plaintiffs moved to amend their pleading via the submission of a second amended complaint, which added the Prand Corporation ("Prand") as a plaintiff, named the members of the Town Board as defendants, provided additional reasons underlying the ill-will purportedly harbored by the defendants against plaintiffs, and set forth additional causes of action.

The 2011 Decision resulted in plaintiffs' Rule 15 motion to amend being denied as to  (1) the claims asserted on behalf of Prand,  (2) the newly asserted causes of action, and (3) the restated original causes of action other than the denial of equal protection claim based on malice. As to that later claim, I asked, sua sponte, for counsel to submit supplemental briefs as to the portion of the 2010 Decision based on Bizzarro.  The relevant portion the 2011 Decision reads:

> In the prior pleadings in this case, plaintiffs'
> equal protection with malice claim alleged that

---

[2]  As discussed in the 2010 M. & O., Bizzarro, as well as Harlen Assocs. v. Vill. of Mineola,  273 F.3d 494 (2d Cir. 2001) also cited in the 2010 Decision, both involved summary judgment determinations.  Nonetheless, I found the core rational of those decisions to be "instructive" in evaluating defendants' Rule 12(b)(6) motion.  (2010 M. &. O. at 16, n.4.)

defendants upzoned plaintiffs' property because "the Town had targeted plaintiffs' property for acquisition and made numerous offers to purchase it, and plaintiffs had repeatedly refused to sell to the Town." (M&O[3] at 16 (quoting plaintiffs' brief).) The Court dismissed this claim, concluding that even if the factual allegations were true, defendants' actions were motivated not by spite or malice, but by a desire to secure compliance with a "legitimate governmental objective" – namely, to purchase plaintiffs' land, preserve it from development, and ultimately protect the Town's natural resources. (M&O at 16-19 (citing Bizzarro, 394 F.3d 82 at 87).)

It could be argued, however, although plaintiffs have not done so, that this Court's reliance in its February 17, 2010 Memorandum and Order on Bizzarro was misplaced.  The investigation in Bizzarro, in which the Department of Corrections sought to stem the flow of contraband from correction officers to inmates, involved a "legitimate governmental objective." Id. at 87-89. Thus, as explained by the Second Circuit, the plaintiff's equal protection with malice claim based on the discipline to which he was subjected for refusing to assist in the investigation was precluded by the legitimate objective sought to be advanced by the Department.  The Town's actions here, however, as alleged in the second amended complaint presently under consideration, were not to advance a legitimate government goal per se, but rather to punish plaintiffs for purportedly frustrating the Town's efforts to purchase property, and to drive down the market value of the subject properties.  Is this a significant distinction in counsels' view? . . .

. . . In that the Court, sua sponte, has raised the Bizzarro issue anew without prior notice to counsel, fairness dictates that counsel be afforded an opportunity to provide their input.  Accordingly, decision is reserved on plaintiffs' motion to assert an amended equal protection with malice claim as

---

[3]  "M&O" in this quoted passage refers to the 2010 Decision.

to the allegations that defendants (1) enacted the 2005 Law with its supposed unconstitutional disparate impact on the Manor Lane property and (2) "mandated trail easements and reserve areas on the [] Manor Lane parcel but not on the adjoining site" (SAC ¶ 30) to, inter alia, punish plaintiffs for not selling their property to the town and to devalue their property in order to effectuate a lower purchase price.  The parties are instructed to submit supplemental briefing on whether this limited claim alone may proceed under a cause of action for equal protection with malice, or whether it should be dismissed under Bizzarro, as previously articulated by this Court in the February 17, 2010 Memorandum and Order.

Plaintiffs' motion to amend the complaint to allege all other claims pled in the SAC is denied with prejudice for the reasons stated [earlier].

(2011 M. & O. at 23-25.)

The question currently before the Court, then, is twofold: (1) whether the Court's reliance on Bizzarro was misplaced, and (2) if so, should the Court's decision vis-a-vis the denial of equal protection with malice claim, as articulated in the 2010 Memorandum and Order, be set aside and defendants' Rule 12(b)(6) motion be denied as that cause of action?

<u>Discussion</u>

1.   <u>My Reliance in the 2010 Decision on Bizzarro</u>

The facts in Bizzarro, briefly alluded to previously, requires some amplification.  The plaintiff-appellees in that case, viz. Bizzarro and Klivans were officers in the Westchester County Department of Corrections.  Each was asked by a higher-ranking officer to assist in an undercover operation addressing the problem of contraband suspected of being delivered to inmates by correction officers.  Each, for various reasons, declined to do so.  As a result, both were disciplined.  Bizzarro and Klivans then commenced an action against the County of

Westchester and the higher ranking officers involved under 42 U.S.C. § 1983, alleging violations

of their equal protection rights based on malice.  Defendants moved unsuccessfully for summary

judgment.  In rejecting that application, the district judge said "there was no legitimate basis for

the order . . . issued to the Plaintiffs, and for refusal of which they were subjected to disciplinary

charges . . . .  Clearly there is a Fourteenth Amendment violation in this case on Plaintiffs view

of the disputed facts . . . ." Bizzarro, 394 F.3d at 85.  The Circuit disagreed, explaining:

> The pertinent question in a constitutional claim is
> not whether the defendants correctly understood the
> rules they were enforcing . . . . [A]n Olech[4]-type
> equal protection claim focuses on whether the
> official's conduct was rationally related to the
> accomplishment of the work of their agency.  If a
> jury could reasonably find that there was no rational
> basis for the defendants to believe that initiating
> charges against these plaintiffs could serve the
> legitimate goals of the DOC, a claim would lie.
>
> Because encouraging cooperation with internal
> investigations is the legitimate interest of the DOC,
> because defendant sought charges under a section of
> the Code of Conduct that could on its face could be
> construed to require cooperation of the type being
> sought, and because before initiating any charges
> defendants consulted extensively with the County
> Law Department, a jury could not reasonably find
> that defendants acted with requisite irrationality.

Id. at 88-89.

Which is to say "[i]f the motivation to punish is to secure compliance with agency

objectives, then by definition the motivation is not spite, or malice, or a desire to get [someone]

for reasons wholly unrelated to any legitimate state objective."  Id. at 87 (second alteration in

original) (internal quotes deleted).  Presumably, few would quarrel with the holding in Bizzarro

which seems eminently sound and straightforward.  However, it is not entirely clear to me how

---

[4] See Vill. of Willowbrook v. Olech, 528 U.S. 562 (2000).

the last quoted excerpt from the opinion should be interpreted, and thus applied, if at all in the present case.  Does it mean that a plaintiff asserting a denial of equal protection claim based on malice must, to prevail, establish  "that the government actor was motivated by reasons 'wholly unrelated to any legitimate state objective.'" Balakrishnan v. Kusel, 2009 U.S. Dist LEXIS 39394 at *27 (E.D.N.Y. May 8, 2009); see also Esmail v. Macrane, 53 F.3d 176, 179-80 (7th Cir. 1995). If that is an appropriate reading of Bizzarro, the 2010 Decision dismissing the subject claim based on Bizzarro should stand because it is evident as a matter of law that the challenged actions by the Town may not be legitimately labeled as "wholly unrelated to any legitimate state objective."

It is true that a plaintiff asserting the type of claim advanced by plaintiffs have a tough row to hoe.  See Bizzarro at 87 ("[W]e have frequently referred to the LeClair [v. Saunders, 627 F.2d 606 (2d Cir. 1980)] formulation in our circuit, often in a zoning context, but rarely have found a constitutional violation."); and Balakrishnan, 2009 U.S. Dist. LEXIS 39394 at *26 (in denying summary judgment to defendant, the district court, nonetheless "recognize[d] that plaintiff[s] rarely succeed on this type of action, primarily because of the level of malice that must be shown by a plaintiff to demonstrate a constitutional violation") (citing Bizzarro). However, a literal application of the language "wholly unrelated to any legitimate state objective" to scenarios significantly distinguishable from the one presented to  the Circuit, has the potential to produce some problematic results.  Consider, for example, the following hypothetical: if state actors passed an upzoning primarily for the purpose of punishing an affected property owner for some type of real or imagined past transgression, such conduct would be insulated from a successful equal protection with malice claim if the challenged action

also promoted, and was intended to promote, however incidentally and minimally, some legitimate governmental goal.

Moving from the hypothetical to the allegations in this case, those allegations, although conclusory, implicate both impermissible governmental goals, viz. to punish plaintiffs, and permissible goals such as the preservation of open space within the Township.  If the overriding motivating factor leading to defendants' actions was punitive in character, it seems to me in hindsight that the claim now under discussion would be beyond the ambit of what was intended in <u>Bizzarro</u>.  That being said, however, I do recognize that the difficulty faced by plaintiffs pursuing this type of claim may be attributable to an understandable, and perhaps well-justified judicial reluctance to try to identify the primary force driving a state actor's conduct in zoning matters when more than one motivator may be at play.  Cf. <u>Harlen Assocs. v. Vill. of Mineola</u>, 273 F.3d 494, 500 (2d Cir. 2001)("A zoning board's decision can be considered irrational [for purposes of a class of one claim] only when the board acts with no legitimate reason for its decision.")(quotation marks and cite deleted).  Indeed, it certainly may be argued that even undertaking that task represents an unjustified interference with discretionary matters best left in the hands of members of the legislative and executive branches of government.

In sum, and upon further reflection, I have, simply put, "second thoughts" about my reliance on <u>Bizzarro</u> in granting defendants' Rule 12(b)(6) motion with respect to plaintiffs' malice-based equal protection claim in the 2010 Decision.  Accordingly, I am going to take a step back, and address the substantially similar element of the subject cause of action.  By doing so, the <u>Bizzarro</u> issue is rendered moot.

2.    Prescinding From My Reliance on Bizzarro in the 2010 Decision, the Plaintiffs' Malice-
      Based Equal Protection Claim in the Second Amended Complaint is Still Subject to
      Dismissal Under Rule 12(b)(6) and, Thus, Permitting its Inclusion in a Second Amended
      <u>Complaint Would be an Exercise in Futility</u>

(a) <u>Standard of Review Applicable to a Rule 15 Motion to Amend</u>

Under Rule 15, the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); <u>AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.</u>, 626 F.3d 699, 725 (2d Cir. 2010).   However, a district court may deny a motion to amend for a number of reasons including the "futility of [the proposed] amendment." <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008)(quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). "The standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss — namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." <u>Amna v. New York State Dep't of Health</u>, 2009 U.S. Dist. LEXIS 127139 at *4 (E.D.N.Y. Sept. 3, 2009)(citation omitted).  To survive a motion to dismiss under 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  As the Supreme Court explained in <u>Twombly</u>:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

<u>Id.</u> at 555 (citations and internal quotation marks omitted).

In determining the adequacy of a targeted complaint, the court should engage in a two-part process. First, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Ashcroft v. Iqbal</u>, 566 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must

be supported by factual allegations." Id.  Thus, "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly,

550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at

679.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." Id.  The Court has defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between
> possibility and plausibility of 'entitlement to relief.'"

Id. at 678.

With specific reference to the present case, plaintiffs posit that "[g]eneral allegations of

disparate treatment are sufficient to survive a motion to dismiss" (See Pls.' Apr. 26, 2011 Letter

Br. at 1) (citing Oleson v. Morgan, 2009 U.S. Dist. LEXIS 57779 (N.D.N.Y. Jul. 8, 2009)

(which, in turn, cited Olech, 528 U.S. 562)).)  The accompanying implicit proposition that

Iqbal's heightened pleading standard is somehow not germane for present purposes is not

persuasive for two reasons (1) the Second Circuit held in Ruston v. The Town Board for the

Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010), cert. denied, 131 S. Ct. 824 (2010), "that

the pleading standard set out in Iqbal supersedes the 'general allegation' [standard previously]

deemed sufficient in DeMuria [v. Hawkes, 328 F.3d 704 (2d Cir. 2003)]," and (2) Oleson relies

on Olech which predates Iqbal by nine years, and the Oleson court did not have the benefit of

Ruston which was not decided until 2010.  In any event, Ruston makes clear that the two part

process articulated in Iqbal, and its holding, governs the assessment of plaintiffs' pleading.

> (b)     Documents Properly Considered In Determining Plaintiffs'
>         Motion to Amend Regarding the Issue of Futility

In deciding a motion to dismiss pursuant to Rule 12(b)(6), or to amend pursuant to Rule

15, the court generally may only consider facts stated in the complaint or "[d]ocuments that are

attached to the complaint or incorporated in it by reference." Roth v. Jennings, 489 F.3d 499, 509

(2d Cir. 2007); see Gillingham v. GEICO Direct, 2008 U.S. Dist. LEXIS 4169, at *6 (E.D.N.Y.

Jan. 18, 2008).  A document not appended to the complaint nor incorporated by reference may

appropriately be considered if it is a document "upon which [the complaint] solely relies and . . .

is integral to the complaint," Roth, 489 F.3d at 509 (quoting Cortec Indus., Inc. v. Sum Holding

L.P., 949 F.2d 42, 47 (2d Cir. 1991)), or "where the complaint 'relies heavily upon its terms and

effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable

L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398

(2d Cir. 2006)); see also Cortec Indus., 949 F.2d at 47 ("[W]hen a plaintiff chooses not to attach

to the complaint or incorporate by reference a [document] . . . which is integral to the complaint,

the defendant may produce [it] when attacking the complaint for its failure to state a claim,

because plaintiff should not so easily be allowed to escape the consequences of its own failure.").

"However even a if the document is 'integral' to the complaint, it must be clear on the record that

no dispute exists regarding the authenticity or accuracy of the document." DiFolco, 622 F.3d at

111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

A district court may also "rely on matters of public record in deciding a motion to

dismiss under [R]ule 12(b)(6)." Parks v. Town of Greenburgh, 344 Fed. Appx. 654, 656 (2d Cir.

August 27, 2009) (Summary Order) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d

67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."); Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (district court may examine public disclosure documents on 12(b)(6) motion); see also Blue Tree Hotels Inc. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

In deciding this matter, the Court has considered documents not overtly incorporated in the pleading, but upon which plaintiffs relied in bringing this action and which are integral to the Second Amended Complaint, or are matters of public record.  These documents include (1) the Comprehensive Plan Update of the Town of East Hampton, adopted May 6, 2005 (Recommendations 9 and 9a) (Defs.' Ex. C);[5] (2) the Conditional Preliminary Approval for Briar Croft Section II, approved August 22, 1990 (Defs.' Ex. F); (3) the Conditional Final Approval of Briar Croft Section II, dated March 10, 1992 (Defs.' Ex. G); and (4) Subdivision Initial Evaluation – East Manor Farm, Preliminary Subdivision, dated November 8, 2004 (Defs.' Ex. M). The first three documents were previously considered by the Court in deciding defendants' prior motion to dismiss.

(c)     Plaintiffs' Motion to Amend Pertains Solely to Their
          Denial of Equal Protection With Malice Claim

As an initial matter, plaintiffs' supplemental briefing papers appear to suggest that a number of claims explicitly dismissed in the 2011 Decision are still alive.  For example, plaintiffs' reply letter states (1) that "defendants imposed open space restrictions," (2) that Board of Health approval was required for a subdivision hearing, and (3) that "in 1989 the defendants allowed a different prior owner of Manor Lane to build 13 homes on the site," whereas plaintiffs are only allowed to build three.  (See Pls.' Reply at 2.)   The first two of these claims were

---

[5] The lettered exhibit C, as well as Exs. F and G infra, refer to defendants' exhibits to their prior 2010 motion to dismiss.

dismissed in the 2011 Decision.  (See 2011 M. & O. at Section VII (c)("The 2007 Law"), and pp. 18-19.)  The Court will therefore not revisit those claims here.  As to the third allegation regarding the prior owners of Manor Lane, no facts are set forth in the Second Amended Complaint to give plausibility to this assertion. (See SAC ¶ 23.)[6]  Notably, there are no facts to suggest that the circumstances surrounding the property in 1989 are comparable to the circumstances nearly twenty years later.

As explicitly stated in the 2011 M. & O., and reiterated above, the sole remaining cause of action under consideration here is the equal protection with malice claim as it relates to the 2005 law and the mandated reserve areas and trail easement.  The Court therefore adverts solely to that claim below.

> (d)    Common to Both Plaintiffs' Class of One Equal Protection
>         Claim, Earlier Dismissed,[7] and Their Denial of Equal
>         Protection With Malice Cause of Action is that (1) the
>         Owners of the Manor Lane and Briar Croft Properties Must
>         be "Similarly Situated," and (2) Iqbal Requires
>         That the Pleading Set Forth Sufficient Facts to Render
>         Their Claim Facially Plausible; Discussion of the Similarly
>         in 2010 M. & O. and in 2011 M. & O.

A party claiming to be aggrieved  presents  a "class of one" equal protection claim by alleging that he, although not a member of a protected "class or group,  . . . has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  See Olech, 528 U.S. at 564 (emphasis added).  A malice-based equal protection claim also has a similarly situated element.  Bizzarro, 394 F.3d at 86 ("We have held that the Equal Protection Clause bars the government from selective adverse treatment of

---

[6] The allegation reads as follows: "With regard to the Manor Lane property, it should be noted that in 1989 the Town of East Hampton had granted an approval to a prior owner for subdivision of the property into thirteen lots." (SAC ¶ 23.)

[7] See 2010 M. & O. at 10-15.

individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.")(internal quotes deleted; first emphasis added; second emphasis in original).

Plaintiffs asserted a class of one claim as one of their two equal protection causes of action in the original amended complaint, with the subjects of the purported disparate treatment being plaintiffs' Manor Lane property and the adjacent Briar Croft property.  However, it was apparent — based on the factual allegations in the complaint, as supplemented by the other materials that the Court legitimately considered such as relevant portions of the public record — that there was a rational basis as a matter of law for treating the two parcels differently given their markedly distinct developmental histories.  As a result, that cause of action was dismissed in that the "allegations in the complaint [were] 'incompatible with' the claim of no rational basis" citing Iqbal, 129 S. Ct. at 1950.  (2010 M. &. O. at 14.)

In the 2010 Decision, however, a comparison of the two parcels was not made with respect to the equal protection with malice claim.  Instead, I bypassed that part of the analysis, proceeding directly to the question of facial implausibility regarding the allegations of malice. Those allegations were found to be inadequate under Iqbal viewing the malice element of the cause of action through the prism of Bizzarro.  But, as earlier noted, I have had second thoughts concerning my interpretation of Bizzarro as applied to the present case.   Therefore, the Court will take a step back and address the substantial similarity requirement which is part and parcel of any equal protection claim.  In doing so, I recognize that a class of one and a malice-based equal protection claim are not the same, but here, as in Bizzarro, the two causes of action constitute only "two slightly different theories" intended to remedy the same perceived wrong.

See Bizzarro, 694 F.3d at 86.  What was said about the class of one claim in the 2010 Decision, more particularly as to the significant differences between the Manor Lane and Briar Croft properties, is germane for present purposes and, therefore, incorporated by reference.  (See 2010 M. & O.  at 10-15.)

The issue of substantial similarity between the subject parcels for pleading purposes was discussed in the 2011 Decision as to plaintiffs' one surviving cause of action.  There, the Court said that the plaintiffs had "identi[fied] individuals who are similarly situated to themselves: the owners of the adjacent to Briar Croft property, . . . [in that the two parcels are alleged to be in the] same hydro-geological zone and have almost identical topography, size, access to public water, ground water quality, surrounding car and pedestrian traffic, air quality and zoning classification." (2011 M. &. O. at 18.)   However, by focusing solely upon the physical similarities between the Manor Lane and Briar Croft properties, I reached an erroneous conclusion as to the "substantially similar" element of plaintiffs' equal protection with malice claim.

> (e)   The Owners of the Manor Lane and Briar Croft Properties are not
>       Similarly Situated Given The Divergent Developmental Histories
>       of the Two Properties

Correctly analyzed, as defendants have underscored in their supplemental memorandum of law submitted pursuant to the 2011 Decision, the physical similarities must be viewed in conjunction with the starkly dissimilar historical development of the parcels.  Viewed consistent with that expanded perspective, it is clear — as explained infra — that plaintiffs' remaining equal protection claim, like its previously dismissed class of one companion cause of action, fails to satisfy the facial plausibility standard of Iqbal.

The 2005 Law at issue — Town of East Hampton Law 16-2005 — rezoned a number of parcels of land in accordance with the Comprehensive Plan Update of the Town of East Hampton adopted May 6, 2005 (the "Comprehensive Plan").  Contained within the Comprehensive Plan were various zoning recommendations pertaining to specific land areas within the Township.  The specific recommendations relating to the plaintiffs' Manor Lane property and their comparators' Briar Croft property are set forth respectively below in sections 9 and 9a of the Comprehensive Plan.

> **9.** Rezone from A and A2 Residence to A5 Residence the land at and near the northwest intersection of Old Stone Highway and Spring Fireplace Rd

.

> **Explanation** - All of this land is within the contributing watershed to Accabonac harbor, a NYS Significant Coastal Fish and Wildlife Habitat and a US Fish and Wildlife significant ecological complex. Most of this land is recommended for protection by the Critical Lands Protection Program of the Peconic Estuary program for marine water quality and ecology purposes. Most of this property is eligible for inclusion in the proposed Accabonac Harbor Scenic Area of Statewide Significance designation. Some of the land is farmland. The portion of this area situated near Old Stone Highway and Spring Fireplace Road, the key intersection in Springs, is within the Springs Historic District and is across from public lands and buildings with historic significance. The rural landscape of this area, including the farmland together with the historic buildings in this area, creates a unique visual character with roots in the region's 17th and 18th century origins.

> Rezoning will help to protect the water quality and ecology of Accabonac harbor and the Peconic Estuary, as well as the rural, scenic and historic character of the area.

> **9a.** Rezone from A to A3 Residence the 18 acre parcel of land within the block of land described in Recommendation # 9 above, located directly opposite the intersection between Springs Fireplace Rd. and Old Stone Hwy.

> **Explanation** - While this parcel of land contains the
> physical characteristics described in Recommendation # 9
> above, the development history of this block of land is
> distinct from the other parcels. This parcel has been created
> as a result of a multi-phased subdivision process which
> received approval from the East Hampton Planning Board.
> In accordance with the 1992 subdivision involving this
> parcel of land, the property owners divided 42 acres into 13
> lots approximately one acre in size, two agricultural
> reserved areas having combined acreage of 9.3 acres, and
> one 18 acre lot reserved for future subdivision into no more
> than five residential lots. By filing this subdivision map,
> the property owner voluntarily reduced the potential
> residential build-out from 36 to 18 lots and set aside the
> reserved area based on the entire acreage. The reserved
> area provides permanent protection to the on-site farmland.
>
> Considering the agricultural easement filed and the
> voluntary reduction in potential residential build-out
> already implemented for this property, rezoning to A3
> Residence is appropriate to protect the natural and cultural
> features of this [sic] on this land.

(Comprehensive Plan at 163-64.)

A review of these recommendations reflects that despite the similarities between Manor

Lane and Briar Croft as alleged in the Second Amended Complaint, the two properties are not

similarly situated for purposes of stating a claim for a violation of equal protection.   The 9a

recommendation acknowledges that the Briar Croft property "contains the physical

characteristics" described in the Manor Lane property's recommendation.  However, the

recommendation  also recognizes that "the development history of [the Briar Croft property] is

distinct from the other parcels."  Specifically, the Briar Croft property underwent a subdivision

approval process back in 1992.  Under the approved plan,  9.3 acres of the 42 acre parcel was set

aside as "agricultural reserved areas" and the total number of residential lots was limited to 18

even though the "potential residential built-out was 36." Id. The recommendations reflected that

this "distinct" "development history" was taken into account when concluding that an "A3"

rezoning would be "appropriate to protect the natural and cultural features of this [] land," i.e., the Briar Croft property. Id.

In sum, plaintiffs were required to set forth facts in their pleading which, assuming their veracity, "plausibly give rise to an entitlement to relief." Iqbal, 566 U.S. at 679.  However, the Court, in deciding a Rule 12(b)(6) motion to dismiss or, as in this case, a Rule 15 motion to amend, is not limited in its analysis to simply perusing the face of the complaint.  Rather, as earlier explained, certain related public records should also be considered. Viewed against that backdrop, and even though the substantial similarly prong of an equal protection claim is generally for a jury to determine, Cine, SK8 Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007), it is obvious that the Second Amended Complaint does not, as a matter of law, satisfy the Iqbal plausibility standard once the divergent developmental histories of the Manor Lane and Briar Croft properties are factored into the analysis.  Having failed to set forth a plausible allegation that the two properties are substantially similar, plaintiffs' motion to amend their pleading to assert disparate treatment under the 2005 law is denied as futile.

The second prong of plaintiffs' remaining equal protection claim alleges that defendants "mandated trail easements and reserve areas on the Manor Lane parcel [for subdivision purposes] but not on the adjoining site to, inter alia, punish plaintiffs for not selling their property to the Town and to devalue their property in order to effectuate a lower purchase price." (2011 M. & O. at 24; see SAC  ¶¶ 56, 58.)

The proposed pleading does not indicate the source of the Town's requirement that plaintiffs set aside trail easements and reserve areas on their property.  However, a public record submitted by defendants in the form of a "Subdivision Initial Evaluation – East Manor Farm, Preliminary Subdivision," shows that the mandate arose as a condition for the approval of a

18

proposed subdivision sought by plaintiffs in September 2004.[8]  (Defs.' Ex. M, at 4.)  This Initial

Evaluation report recommends that the proposed trail easement on the Manor Lane property be

appropriately located so as to "provide a linkage to the trail easement proposed on the Briar

Croft Section III subdivision application," id., thus indicating that the Briar Croft parcel was also

burdened with a trail easement requirement.  That conclusion is reinforced by reference to

another public record relied upon by plaintiffs in their pleading, and which was previously

considered by me with respect to defendants' original Rule 12(b)(6) motion, viz. the 1992

"Conditional Final Approval" for the "Briar Croft Section 2 Final Subdivision."  (Defs.' Ex. G.)

That public document reads in pertinent part: "The applicants shall grant to . . . the Town of East

Hampton a trail easement . . . ."  (Id., ¶ 16.20.)

      With respect to plaintiffs assertion that Manor Lane, but not Briar Croft, was required to

set aside reserve areas as part of their subdivision plan, the Town Planning Board's 1990

Conditional Preliminary Approval of Briar Croft's subdivision application reflects that just over

nine acres of the property, or 21 percent of the total Briar Croft property area, was to be set off

as a reserved area.  (Defs.' Ex. F ¶¶ 1, 4, 10-11.)  Similarly, the 1992 Conditional Final

Subdivision Approval for the Briar Croft property requires the establishment of agricultural

reserved areas,  (Defs.' Ex. G, ¶¶ 16.20, 16.21 and 16.22), and scenic and conservation

easements "to be left in their natural state forever,"  (id. ¶¶ 16.18 and 16.19).

      In sum, plaintiffs' disparate treatment claim vis-a-vis "trail easements" and "reserve

area[]" requirements is — as determined from the face of the complaint and the concomitant,

appropriately considered public records — simply wrong, and therefore, not plausible for Iqbal

pleading purposes.

---

[8] The imposed conditions were presented in the referenced Initial Evaluation on November 8,
2004, suggesting that this prong of plaintiffs' Equal Protection claim may be time barred.

<u>Conclusion</u>

For the reasons stated above, plaintiffs have failed to plead sufficient facts to state an equal protection with malice claim.   As all other claims alleged in plaintiffs' Second Amended Complaint have previously been dismissed, plaintiffs' case is hereby dismissed in its entirety. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:          Central Islip, New York
               June 18, 2012

                                        _____/s_____
                                        Denis R. Hurley
                                        Unites States District Judge